FILED
2021 Nov-24  AM 11:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **CHERYL CHAMPION,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:20-cv-01174-CLM** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Cheryl Champion seeks disability and disability insurance benefits from the Social Security Administration ("SSA") based on several impairments. The SSA denied Champion's application in an opinion written by an Administrative Law Judge ("ALJ"). Champion argues that the ALJ erred in evaluating her subjective pain testimony.

As detailed below, the ALJ applied the correct legal standards and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

I.     **Statement of the Case**

A.     **Champion's Disability, as told to the ALJ**

Champion was 55 on her alleged disability onset date and 56 at the time of the ALJ's hearing decision. R. 14, 139. Champion completed 2 years of college. R. 155. And she has past work as a paint inspector, automobile assembler, and office manager. R. 49.

At the ALJ hearing, Champion testified that she suffers from rheumatoid arthritis, lupus, osteoarthritis, knee problems, and hypertension. R. 43. According to Champion, her joint problems cause her legs and middle of her back to hurt. R. 44. And Champion can only walk about 30 yards before having to stop. *Id.* During cold and rainy weather, Champion feels a steady ache, and "it feels like lightning running through [her] bones." R. 46.

Champion can drive "[m]ost of the time." R. 40. On bad days, Champion just lies around all day. R. 45. But on good days she'll "do a little laundry and sweep and mop." *Id.* Though most of the time her oldest daughter comes over and does the housework for her. *Id.* Some days Champion's husband has to get her out of the bed and dressed. *Id.* But he doesn't do this as much since she stopped working. *Id.* Champion will sometimes go to the grocery store. *Id.* Depending on if it's a good day or a bad day, Champion will either push the buggy or ride a cart to get around the store. *Id.*

**B.    Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied. If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied. If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appx. 1? | If yes, claim granted. If no, proceed to Step 4. |
| *Determine Residual Functional Capacity* | | |
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5). As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis. The intermediate step of

determining Champion's residual functional capacity is the most important step here, as Champion's challenge flows from the ALJ's decision at this juncture.

### C.     Champion's Application and the ALJ's Decision

The SSA reviews applications for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Champion applied for disability insurance benefits and a period of disability in July 2019, claiming that she was unable to work because of various ailments, including rheumatoid arthritis, systematic lupus erythematosus, osteoarthritis, degenerative joint disease of the bilateral knees, obesity, and hypertension. After receiving an initial denial in October 2019, Champion requested a hearing, which the ALJ conducted in March 2020. The ALJ ultimately issued an opinion denying Champion's claims in April 2020. R. 14–26.

At Step 1, the ALJ determined that Champion was not engaged in substantial gainful activity and thus her claims would progress to Step 2. R. 19.

At Step 2, the ALJ determined that Champion suffered from the following severe impairments: rheumatoid arthritis, systematic lupus erythematosus, osteoarthritis, degenerative joint disease of her bilateral knees, and obesity. *Id.*

At Step 3, the ALJ found that none of Champion's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 CFR

Part 404, Subpart P, Appendix 1. R. 20. Thus, the ALJ next had to determine

Champion's residual functional capacity.

The ALJ determined that Champion had the residual functional capacity to

perform light work with these added limitations:

- Champion can stand and walk no more than 4 hours in an 8-hour workday.

- Champion can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds.

- Champion can occasionally balance, stoop, kneel, crouch, or crawl.

- Champion can frequently reach, handle, and finger bilaterally.

- Champion can tolerate occasional exposure to weather or humidity, as well as extreme cold and extreme heat.

- Champion can never be exposed to workplace hazards such as moving mechanical parts and high, exposed places.

R. 20–25.

At Step 4, the ALJ found that Champion could perform her past relevant work

as an office manager. R. 25. So the ALJ found Champion not disabled under the

Social Security Act. R. 26.

Champion requested an Appeals Council review of the ALJ's decision. R. 1–

11. The Appeals Council will review an ALJ's decision for only a few reasons, and

the Appeals Council found no such reason under the rules to review the ALJ's

decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III.   Legal Analysis

Champion asserts that the ALJ erred when he discredited Champion's testimony about the severity of her joint pain.

An ALJ must apply the two-step "pain standard" to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If he does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show

"that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

In her function report, Champion stated that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks. R. 179. She also reported that her impairments diminished her ability to sleep, perform personal care, prepare meals, perform household chores, perform yard work, shop, and perform hobbies. R. 175–78. At the ALJ hearing, Champion testified that her pain was worst in her legs and mid-back. R. 44. She also noted that she cannot walk very far and often rides in a cart to shop. R. 44–45. And Champion stated that she suffers from swelling and has more pain when it is rainy. R. 46. Champion said that she takes about 8 pills a day to treat her lupus and has suffered side effects, such as nausea from these medications. R. 44, 47. Champion finally reported that she must sit with her right leg propped up when watching TV because her knees "don't bend hardly at all." R. 47–48.

The ALJ found that Champion's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. R. 21. But he found that Champion's statements about the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record. *Id.* The ALJ supported this finding by explaining that the many normal examination findings in the record and Champion's admitted activities and abilities contradict Champion's subjective pain testimony. R. 23. As explained below, substantial evidence supports the ALJ's credibility determination.

1. <u>Medical evidence</u>: Champion asserts that the ALJ failed to properly evaluate X-rays of her hands and knees, treatment notes that documented a positive rheumatoid factor/significant arthritis, records from Anniston Medical Clinic, and treatment records that consistently note Champion's complaints of pain. But as Champion concedes, the ALJ did consider these records when assessing her residual functional capacity. For example, the ALJ noted that November 2015 X-rays revealed bilateral osteoarthritis in Champion's bilateral hands and moderate joint space narrowing in her knees. R. 22. The ALJ also acknowledged that August 2018 X-rays revealed significant arthritis in Champion's bilateral knees and that lab results from August 2019 documented a positive rheumatoid factor. *Id.* The ALJ also cited Champion's records from Anniston Medical Clinic, which documented Champion's complaints of pain, crepitus in her bilateral knees, and swelling and deformities in the joints of her hands. *Id.*

The ALJ, however, found that other medical records supported the finding that Champion's joint pain wasn't as severe as she alleged. As the ALJ explained, Champion's treatment records repeatedly noted that her lupus was mild and stable

8

with medication. R. 364, 405. And Champion's treatment records from September 2019 and January 2020 documented mainly normal lab results. For example, in September 2019, Dr. Chindalore noted "[a]ll lupus tests ok except for pos[itive] RNP." R. 365, 367. And in January 2020, Dr. Chindalore stated that Champion's "[l]upus [was] stable, doing well on current meds. Continue treatment. Osteoarthritis appears stable, continue current treatment." R. 405. Plus, Champion's consultative examination showed no paraspinal muscle tenderness, edema, cyanosis, clubbing, or swollen joints. R. 355. The consultative exam also showed that Champion had normal grip strength, normal dexterity, normal strength in her upper and lower extremity joints, normal reflexes, normal upper extremity range of motion, and normal range of motion in her bilateral hips and knees. R. 355–58.

The ALJ also correctly noted that several of Champion's musculoskeletal findings throughout the relevant period were normal. For example, an August 2019 examination showed that Champion had a normal range of motion with no edema or tenderness. R. 350. And in September 2019, Champion had normal lumbosacral spine movements and good range of motion in her shoulders, wrists, hands, and ankles. R. 370. Champion also had normal range of motion in her right knee and normal but painful range of motion in her left knee. *Id.* In November 2019, Champion similarly had normal lumbosacral spine movements and good range of motion in her shoulders, wrists, hands, hips, and ankles. R. 364. She also had normal

but painful range of motion in both her left and right knees. *Id.* And in March 2020, a physical examination showed that Champion had a normal range of motion with no musculoskeletal tenderness. R. 410.

This court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). And though Champion argues otherwise, the ALJ's opinion shows that he adequately considered medical evidence both favorable and unfavorable to Champion when assessing her credibility. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" as long as the decision is not "a broad rejection" that casts doubt on whether the ALJ considered the claimant's "medical condition as a whole."). So the court finds that the ALJ properly evaluated the objective medical evidence when assessing Champion's credibility.

2. <u>Daily life activities</u>: Aside from finding that the objective medical evidence undermined Champion's subjective testimony, the ALJ also found several of Champion's daily life activities to contradict her testimony. For example, the ALJ noted that Champion can dress herself and that she sometimes walks when shopping. R. 23. The ALJ also observed that Champion reported that she can prepare meals, drive, garden, and perform household chores, such as sweeping, mopping, washing clothes, and washing dishes. *Id.*

A claimant's admission that she participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations. *See* 20 CFR § 404.1529(c)(3)(i).

Champion asserts that the ALJ's description of her daily activities were inaccurate because he did not note several limitations Champion identified when reporting her activities. For example, Champion notes that she reported that on bad days she lies around all day. R. 45. And though Champion said that on good days she does a "little laundry, sweep[s,] and mop[s]," *id.*, she also reported that it usually takes her all day to complete these tasks. R. 176. Champion also points out that she testified that on some days she needs her husband to help dress her. R. 45. And Champion notes that sometimes she must ride a cart at the grocery store. *Id.* Finally, Champion explains that while she said she can prepare meals, she also reported that she must sit on a stool while doing so. R. 176.

But Champion did report engaging in the activities that the ALJ identified in his decision, so the ALJ didn't misstate the facts. For example, though the ALJ noted that Champion *sometimes* walks when she shops, he also recognized that Champion reported sometimes using a cart to shop because she cannot walk very far. R. 23, 21. And the ALJ acknowledged Champion's testimony that her impairments affect her

ability to perform personal care, prepare meals, perform household chores, and perform yard work. R. 21. So even though Champion qualified her level of activity, it was still appropriate for the ALJ to consider her daily activities when assessing her subjective testimony. *See* 20 C.F.R. § 404.1529(c)(3)(i). And the ALJ reasonably found that these reported activities were one of several factors that undermined Champion's subjective pain testimony.

* * *

In short, having reviewed the medical and non-medical evidence in the record, the court finds that a reasonable person could have reached the same credibility determination as the ALJ. So even though the court may have made a different credibility determination, the ALJ did not reversibly err. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [Champion's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## IV.    Conclusion

In summary, the court has reviewed the parties' briefs, the ALJ's findings, and the record evidence and finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. So the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**DONE** on November 24, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE